**John B. DeSARNO, et al., Petitioners,**

v.

**DEPARTMENT OF COMMERCE, Respondent.**

**Appeal No. 85-583.**

United States Court of Appeals, Federal Circuit.

Decided May 2, 1985.

Jerry Goldstein, Topf, Zell, Kolodny & Goldstein, Bethesda, Md., for petitioners.

David M. Schlitz, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Susan M. Burnett.

Before MARKEY, Chief Judge, RICH, Circuit Judge, and NICHOLS, Senior Circuit Judge.

MARKEY, Chief Judge.

John B. DeSarno (DeSarno) and Martina Y. Carter (Carter) petition for review of consolidated Merit Systems Protection Board (Board) decisions Nos. DC07528410273 and DC07528410274, 22 M.S.P.R. 651, sustaining their removal by the National Weather Service, Department of Commerce, for submitting false travel vouchers. We affirm.

### Background

In April 1983, DeSarno, Carter, and a third employee, James Green, were detailed from the National Weather Service's offices in Suitland, Maryland, to Silver Spring, Maryland, a distance of approximately 30 miles. Green testified before the Board that: DeSarno suggested that there be a carpool and that each person in the pool could file vouchers for travel reimbursement; he told DeSarno that would be fraudulent; he would not conceal such an arrangement from the agency; DeSarno and Carter invited him to join their carpool

after he was no longer entitled to travel reimbursements; he joined the pool and kept an informal calendar of whose turn it was to drive; he suspected that DeSarno and Carter were submitting false travel vouchers; he never confronted them with his suspicions; his suspicions were confirmed when he found copies of DeSarno and Carter's travel vouchers in a photocopier and rough copies of additional travel vouchers in a work tray; fearing implication if he remained silent, he told his suspicions to Bernard McKendree (McKendree), his and DeSarno's and Carter's second line supervisor.

McKendree testified that: persistent inquiries about reimbursement regulations had earlier caused him to wonder "if something was amiss"; he looked "in an informal and casual manner" for patterns in employees' arrival and departure times; he maintained a record, recording drivers, riders, and comments (with dates) on a back page of his log book; after Green announced his suspicions, he had hoped to handle the problem at the lowest possible level giving the employee the benefit of the doubt; he assumed that there was error in interpretation of the regulations; he observed DeSarno and Carter's driving habits for three days; when DeSarno and Carter submitted travel vouchers for his signature, he called them into his office and refused to sign the vouchers because he considered them false; he suggested there was a misunderstanding and requested that DeSarno and Carter recalculate and resubmit their travel vouchers, a suggestion they declined; he conferred with DeSarno and Carter's supervisor, William Brockman; he then referred the matter to his supervisor and Chief of Operations, Walter Telesetsky.

Telesetsky testified that: DeSarno and Carter came to him about their travel vouchers; he told them of his suspicions; he conferred with McKendree, Brockman, DeSarno, and Carter; he told DeSarno and Carter he had evidence he felt refuted their denials; he requested that they submit corrected vouchers, a request they declined; he met again with DeSarno and Carter, to give them an opportunity to refute the allegations or take corrective action, an opportunity they declined; he proposed removal on October 12, 1983.

On October 13, DeSarno and Carter met with the agency's representative, Thomas Conly, who provided them with the files and answered their questions concerning their rights and alternatives.

On October 14, DeSarno and Carter retained counsel, who on November 7 accompanied them in oral reply before Telesetsky and submitted a written reply. The replies attacked Green's credibility and protested Telesetsky's role as Oral Reply Officer. DeSarno presented an affidavit on November 29.

Removed effective January 20, 1984, DeSarno and Carter appealed to the Board. Following a May 10, 1984 hearing, the presiding official found that: (1) Green was a credible witness; (2) the evidence tended to corroborate his testimony; and (3) DeSarno and Carter's evidence failed to refute the existence of a carpool and was less credible than the agency's evidence. She concluded that: (1) the agency had proved the existence of a carpool by a preponderance of the evidence; (2) travel vouchers submitted by DeSarno and Carter were fraudulent; (3) the agency properly weighed its choice of penalty; and (4) removal was reasonable.

*Opinion*

*I. Due Process*

DeSarno and Carter say the agency violated their right to due process because Telesetsky was both proposing and deciding official, citing *Sullivan v. Department of the Navy*, 720 F.2d 1266 (Fed.Cir.1983), and likening the present procedure to the *ex parte* communications there condemned. *See also Ryder v. United States*, 585 F.2d 482, 218 Ct.Cl. 289 (1978); *Camero v. United States*, 375 F.2d 777, 179 Ct.Cl. 520 (1967). They also say that an alleged *ex parte* submission by Green and failure to timely provide a written agency rationale for its decision constituted harmful error.

After careful review of the entire record and the authorities, we find petitioners' contentions meritless.

DeSarno and Carter demand the appointment of some disinterested person as Oral Reply Officer and, in effect, a full-blown adversary proceeding at the agency level, pre-termination stage. The demand seeks to further expand the already extensive range in which the judicialization juggernaut has been permitted to roam.

The Supreme Court has forestalled at least this particular demand for additional judicialization. In *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Court set forth the process due a public employee before removal:

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See *Arnett v. Kennedy,* 416 U.S. [134] at 170–171 [94 S.Ct. 1633, at 1652–1653, 40 L.Ed.2d 15] (Opinion of POWELL, J.); *id.,* at 195–196 [94 S.Ct., at 1664–1665] (Opinion of WHITE, J.); see also *Goss v. Lopez,* 419 U.S. [565] at 581 [95 S.Ct. 729 at 739, 42 L.Ed.2d 725]. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

—— U.S. at ——, 105 S.Ct. at 1495.

■ In this case, DeSarno and Carter received all that is required by *Loudermill* and more. McKendree gave them repeated opportunities to recalculate and resubmit their vouchers before he approached Telesetsky, who met twice with them before he proposed any adverse action. On receiving notice of proposed removal, they met with Conly only to review the files and discuss their procedural rights. They retained counsel, made oral and written replies, and submitted a post-reply affidavit.

Following removal, DeSarno and Carter were afforded full review in an evidentiary adversary proceeding before a presiding official of the Board, opportunity for appellate review by the full Board, and judicial review before this court. *See Loudermill,* —— U.S. at —— n. 7, 105 S.Ct. at 1493 n. 7. No warrant whatever exists for front-loading that already involved process.

■ At the pre-termination stage, it is not a violation of due process when the proposing and deciding roles are performed by the same person. The law does not presume that a supervisor who proposes to remove an employee is incapable of changing his or her mind upon hearing the employee's side of the case. Further, it is of interest that in this case the record refutes DeSarno and Carter's implication that Telesetsky was biased, his investigation inadequate, or his decision factually erroneous. At the Board hearing, Telesetsky responded point by point to everything on which DeSarno and Carter had relied in their pre-termination oral and written replies. The record demonstrates that, as deciding official, Telesetsky carefully considered the proffered evidence and conducted a full, impartial, and independent review of the charges at the pre-termination stage.

Nor does any Civil Service law or agency regulation support the present allegations of harmful procedural error. DeSarno and Carter cite no statute, regulation, policy, directive, Board decision, or court decision requiring an agency to assign separate persons to perform the proposing and deciding roles. Indeed, the National Weather Service normally requires that the proposing official also be the deciding official. *See* NOAA Personnel Handbook, Chapter 13, section 13–06. DeSarno and Carter's citation to regulations governing grievance procedures, 5 CFR § 771.302(b), is simply irrelevant.

DeSarno and Carter's reliance on *Sullivan, supra,* is misplaced. In that case, there was no dual-role issue, and the official that made *ex parte* contacts with the deciding official was seeking "vengeance". No evidence has been here adduced that Green, or anyone else, was bent on vengeance. *Ryder* and *Camero, supra,* involved trial-type adversarial proceedings provided by agency regulations not here involved. *See Welcker v. United States,* 752 F.2d 1577, 1582–83 (Fed.Cir.1985).

 We conclude that the pre-termination steps taken in this case met all requirements of constitutional and statutory due process.

### Substantial Evidence

DeSarno and Carter present an extensive review of the testimony and evidence which bears a superficial plausability. In the manner of a jury argument, each minute "inconsistency" or possible inconsistency is discussed in depth. Because we must determine whether the Board's decision was based on substantial evidence we have reviewed the record in detail. That review shatters the surface attractiveness of DeSarno and Carter's assertions. The argument, attacking Green's credibility and citing documents (bank receipts, checks, affidavits) as refuting the Board, is unpersuasive in light of the rules governing appellate review.

In *Griessenauer v. Department of Energy,* 754 F.2d 361 (Fed.Cir.1985), this court refused to second-guess a presiding official's credibility determination, based as it was on demeanor during direct and cross-examination. *Griessenauer,* 754 F.2d at 364. We decline in this similar case to abandon that sensible approach, which impartially serves employees and agencies alike.

That some parts of a witness' testimony may be attacked is a common phenomenon. It supplies no basis, however, for holding that the fact-finder is not entitled to credit other parts of that witness' testimony. Where, as here, the presiding official expressly found a witness (Green) credible, this court cannot substitute a contrary credibility determination based on a cold paper record.

The presiding official determined that the agency had supported its charges by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B). That evidence, formed of testimony and circumstantial elements, is such as to preclude a determination by this court that the Board's decision was not based on substantial evidence. 5 U.S.C. § 7703(c).

We have considered each of DeSarno and Carter's other arguments and find them without merit.

AFFIRMED.