Ross K. **BERDAHL**, Appellant,

v.

**NORTH DAKOTA STATE PERSONNEL BOARD, Appellee.**

Civ. No. 890081.

Supreme Court of North Dakota.

Oct. 24, 1989.

\* \* \* \* \* \*

Steven L. Latham of Wheeler Wolf, P.C., Bismarck, for appellant.

Patricia M. Moen, Asst. Atty. Gen., Bismarck, for appellee.

VANDE WALLE, Justice.

Ross Berdahl appealed from a judgment of the district court of Foster County affirming the North Dakota Personnel Board's termination of his employment. We affirm the district court's judgment.

Ross Berdahl was employed as an Equipment Operator II with the Carrington section of the North Dakota Highway Department. Berdahl's employment involved the operation of a four-ton Highway Department truck and similar vehicles. In addition to his employment with the Highway Department, Berdahl repaired automobiles as a personal business.

Highway Department policies prohibit the use of State vehicles for personal purposes. Department policies also provide that outside employment must not interfere with the employee's performance of his or her Highway Department job, and must be done outside assigned working hours. These policies were in effect throughout the eight years Berdahl was employed with the Highway Department. The violation of either of these policies by Highway Department employees could result in disciplinary sanctions up to and including dismissal. These Department policies were discussed at district safety meetings conducted twice a year. Attendance at the safety meetings was mandatory for all employees, and Berdahl regularly attended those meetings while employed by the Highway Department.

On September 23, 1986, Jerry Miller, the maintenance superintendent for the Devils Lake district of the Highway Department, discussed a number of violations of Department policy with Berdahl. Miller informed Berdahl that the district office had received a report from a member of the public alleging that he had misused a State vehicle for

personal purposes. Miller then specifically warned Berdahl that if he misused State vehicles it could result in the termination of his employment.[1]

On March 13, 1987, Miller observed Berdahl driving a State vehicle outside his normal work routes. When Miller questioned Berdahl about the incident, Berdahl eventually admitted that he had been en route to a local machinery dealership to pick up automobile parts for his personal use. On March 16, 1987, Berdahl was notified that the Highway Department was considering suspending him from his employment. On April 9, 1987, the Department notified Berdahl of its decision to suspend his employment for a period of three days. The reason given by the Department for the three-day suspension was that Berdahl had, on two separate occasions,[2] violated the Department's policies on the use of State vehicles. Berdahl appealed the action through the Highway Department's internal grievance procedure and then to the State Personnel Board. The State Personnel Board upheld the suspension of Berdahl, finding that he had violated Department policy in September of 1986 and in March of 1987 by using a State vehicle for personal purposes. Berdahl served the three-day suspension. Since the date of the suspension, there is no indication that Berdahl further violated Department policies regarding the personal use of State vehicles.

After the Highway Department had suspended Berdahl, it learned of another incident that occurred *prior to* Berdahl's suspension in which Berdahl had used a State vehicle for personal purposes. In May of 1987, Larry Falk, a Highway Department employee, informed the district engineer for the Devils Lake district, Clay Sorneson, that Berdahl stopped at Lake Region Junior College on December 17, 1986, to run a personal errand while using a State vehicle. Berdahl eventually admitted the December incident of vehicle misuse.

In the meantime, Sorneson had received a report from the mayor of Carrington, James Erickson, that Berdahl entered one of Erickson's businesses in April of 1987 to conduct personal matters during Highway Department hours. Sorneson also studied Berdahl's sick leave records and found a sick leave usage that was high.

On July 24, 1987, Sorneson informed Berdahl by written notice that the Department was contemplating dismissing him. The notice indicated that the contemplated disciplinary action was based upon charges that Berdahl operated a Department vehicle for personal use, conducted personal business during Department work hours, created an unacceptable public image for the Department, and abused his sick leave benefits.

Berdahl responded to the Department's notice of its intent to discipline him through a letter by his attorney dated July 28, 1987. On August 20, 1987, Berdahl was informed of the Highway Department's decision to terminate his employment. Berdahl appealed his termination through the Department's internal grievance procedures and eventually to the State Personnel Board. On March 30, 1988, the Board convened to hear Berdahl's appeal. The Board consisted of five persons, one of whom was Joseph Carlson, a management officer in the Driver's License Division of the Highway Department. The Board upheld the dismissal of Berdahl by a three-to-two vote, with Carlson voting to terminate Berdahl's employment. Berdahl subsequently appealed the Board's decision to the district court. On December 21, 1988, the district court entered a judgment affirming the decision of the State Personnel Board. Following

---

1. Miller also warned Berdahl about his practice of taking noon meals in Carrington instead of at the worksite as required by Department policies. On numerous occasions, Miller had seen Berdahl's State vehicle in Carrington during the noon hour when he should have been at his assigned worksite. Miller further admonished Berdahl about his failure to work closely with his supervisor and section crew. Berdahl was frequently unavailable by his two-way radio when his supervisor attempted to contact him during working hours.

2. The two occasions of misuse cited by the Department involved the September 1986 incident reported by a private citizen and Berdahl's admitted private use of a State vehicle on March 13, 1987.

the district court's judgment, Berdahl filed a timely appeal to this court.

Berdahl raises three issues on appeal. First, Berdahl contends that the Department's findings of fact .that he violated Highway Department policies were not supported by a preponderance of the evidence. Next, Berdahl argues that he was denied a fair hearing and due process in regard to the termination of his employment. Finally, Berdahl contends that administrative res judicata prohibits the Board and the Department from further disciplining him for the violations of Department policies that occurred prior to earlier disciplinary action for violations of the same policies. We consider each of these arguments separately.

## I. FINDINGS OF FACT

Berdahl first argues that the Department's findings of fact regarding his personal use of State vehicles, his conducting of personal business during Department hours, his creation of an unacceptable public image, and his abuse of sick leave benefits were not supported by a preponderance of the evidence.

 When an administrative agency's decision is appealed to the district court and then to the Supreme Court, the Supreme Court reviews the decision of the agency and not the decision of the district court. *Falcon v. Williams Cty. Social Serv. Bd.*, 430 N.W.2d 569 (N.D.1988); *Goeller v. Job Service North Dakota*, 425 N.W.2d 925 (N.D.1988); *Montana–Dakota Util. Co. v. P.S.C.*, 413 N.W.2d 308 (N.D. 1987). Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., which requires us to affirm an agency's decision unless one of six con-

ditions is present.[3] Section 28–32–19, N.D. C.C.; *Mund v. North Dakota Workers Compensation Bureau*, 444 N.W.2d 706 (N.D.1989); *Triangle Oilfield Services, Inc. v. Hagen*, 373 N.W.2d 413 (N.D.1985); *Matter of Annexation of Part of Donnybrook Pub. S.*, 365 N.W.2d 514 (N.D.1985). Specifically, under Section 28–32–19(5) we must affirm an agency's decision unless its findings of fact are not supported by a preponderance of the evidence. See Section 28–32–19(5); *Inglis v. North Dakota Workmen's Comp. Bureau*, 312 N.W.2d 318 (N.D.1981). The standards we use in making such a determination have been summarized as follows:

1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions drawn were supported by the weight of the evidence.

2. We exercise restraint when we review administrative agency findings.

3. It is not the function of the judiciary to act as a super board when reviewing administrative agency determinations.

4. We will not substitute our judgment for that of the qualified experts in the administrative agencies.

*Skjefte v. Job Service North Dakota*, 392 N.W.2d 815, 817 (N.D.1986); *Blueshield v. Job Service North Dakota*, 392 N.W.2d 70, 72 (N.D.1986). See also *Howes v. Workers Compensation Bureau*, 429 N.W.2d 730 (N.D.1988), *cert. denied* — U.S. —, 109 S.Ct. 1126, 103 L.Ed.2d 189 (1989); *Redwood Village v. N.D. Dept. of Human S.*, 420 N.W.2d 333 (N.D.1988); *Grace v. North Dakota Workmen's Comp. Bureau*, 395 N.W.2d 576 (N.D.1986); *Otto v. Job*

---

3. Section 28–32–19 provides in relevant part:
 "[T]he court shall affirm the decision of the agency unless it shall find that any of the following are present:
 "1. The decision or determination is not in accordance with the law.
 "2. The decision is in violation of the constitutional rights of the appellant.
 "3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
 "5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
 "6. The conclusions and decision of the agency are not supported by its findings of fact."

*Service North Dakota,* 390 N.W.2d 550 (N.D.1986).

■ Our review of the Highway Department's termination hearing transcript, which was submitted to the State Personnel Board on appeal, reveals that Berdahl's first argument is rather anemic. The transcript is replete with testimony by Sorneson and Falk regarding Berdahl's use of a State vehicle on December 17, 1986, to carry out personal business at Lake Region Junior College in Devils Lake. Furthermore, the transcript contains Berdahl's admission of this incident of vehicle misuse.

Likewise, the transcript contains testimony by Sorneson that he had received a report from Mayor Erickson stating that Berdahl had entered one of Erickson's businesses during Department hours to conduct personal business. There was also testimony by Mr. Lee, the manager of a tire company in Carrington, indicating that Berdahl would often stop by his place of business during Department hours to visit with his shop foreman, and that Berdahl was not conducting business on behalf of the Highway Department at the time.

Additionally, the transcript contains testimony by Sorneson and Miller that they could not reach Berdahl by telephone at his mobile home on days when Berdahl claimed sick leave. Sorneson further testified that he statistically analyzed Berdahl's sick leave use and found it to be well above the district norm.

The only testimony on Berdahl's behalf came from Berdahl himself. Berdahl's testimony was often uncorroborated, and at times offered little explanation for the policy violations of which he was accused.[4] Considering the evidence presented as a whole, we are not prepared to state that a reasoning mind could not have reasonably concluded that the factual conclusions drawn were supported by the weight of the evidence.

## II. DUE PROCESS

Berdahl's second argument is that he was denied a fair hearing and due process in regard to the termination of his employment. Specifically, Berdahl contends that his response by letter to Sorneson's July 24, 1987, notice of intent to discipline was reviewed by Sorneson, his primary accuser, and not by a review board as required by departmental policies.[5] Berdahl claims this was contrary to the mandate of the United States Supreme Court in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Berdahl also claims that his due process was violated because Joseph Carlson, an employee of the Highway Department, was a member of the State Personnel Board and participated in its decision on Berdahl's appeal.

In *Cleveland Bd. of Educ. v. Loudermill, supra,* the United States Supreme Court held that a State statute which established a "for cause" dismissal standard for public employees created a property right in that employment, and that the termination of such a property right triggered procedural due-process protections under the Fourteenth Amendment. The Court indicated that the "principle [of due process] requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 504. The Court pointed out that "the pretermination 'hearing,' though necessary, need not be elaborate," and that " 'something less' than a full evidentiary hearing is sufficient

---

**4.** By way of example, Berdahl testified that he was at his mobile home on sick leave when Miller and Sorneson each tried to contact him by telephone, but that he simply had not heard the telephone ring on either of the two occasions. Berdahl also testified that in the past, a former supervisor had at times given him permission to use State vehicles for personal purposes, although he failed to substantiate such a claim by calling the former supervisor as a witness on his behalf.

**5.** Berdahl, however, did not contend that the Department's failure to follow its internal policies amounted to a breach of his employment contract with the State. See, e.g., *Zimmerman v. Minot State College,* 198 N.W.2d 108 (N.D. 1972). Because Berdahl did not raise this issue, we do not consider it in this opinion.

prior to adverse administrative action." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The Court determined that all the process that is due to such a public employee is that he receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," coupled with a full post-termination administrative hearing. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. Such procedures were deemed sufficient by the Court to balance the Government's interest in expeditiously removing unsatisfactory employees, against the risk of erroneous termination of public employees with property interests in their employment. *Loudermill*, 470 U.S. at 542–543, 105 S.Ct. at 1493–1494, 84 L.Ed.2d at 503–505. ·

■ In the instant case, Berdahl does not claim that he failed to receive notice of the charges pending against him, an explanation of his employer's evidence, or an opportunity to respond. Rather, Berdahl implies that it was a violation of his due process for Sorneson alone, and not a review board as required by Department policies, to review his response prior to terminating his employment. In essence, Berdahl claims that the procedural safeguards of the "hearing" provided by Sorneson prior to termination were constitutionally inadequate.

*Loudermill* did not specifically address the issue of whether or not the agency decisionmaker at a "pretermination hearing" had to be an impartial outsider. However, Federal courts have dealt with the issue and have ruled that the Due Process Clause does not require a State to provide an impartial decisionmaker at the pretermination hearing. See, e.g., *Hanley v. General Services Admin.*, 829 F.2d 23 (Fed.Cir.1987) [terminated employee was not denied due process simply because the same individual ordered the investigation, issued notice of proposed removal, and signed removal letter]; *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir.1987) [due process does not require a State to provide an impartial decisionmaker at the preter-

mination hearing]; *DeSarno v. Department of Commerce*, 761 F.2d 657 (Fed.Cir. 1985) [at the pretermination stage, it is not a violation of due process when the proposing and deciding roles are performed by the same person]; *Hadigian v. Board of Governors, Fed. Reserve*, 463 F.Supp. 437 (D.D.C.1978), *aff'd*, 612 F.2d 586 (D.C.Cir. 1980) [due process did not entitle discharged employee to a pretermination hearing before an impartial factfinder].

In *DeSarno v. Department of Commerce, supra*, John DeSarno was removed from his employment at the National Weather Service for submitting false travel vouchers. Walter Telesetsky, the chief of operations of the Weather Service office in Suitland, Maryland, was the individual who gave DeSarno notice of termination and who proposed his removal. DeSarno then submitted an oral and written reply to the charges to Telesetsky, whose position included the role of "Reply Officer." Telesetsky eventually terminated DeSarno and DeSarno appealed, claiming that his right to due process was violated because Telesetsky was both the proposing and deciding official at the pretermination stage. DeSarno argued that he was entitled to a disinterested decisionmaker at the pretermination stage. The Fifth Circuit Court of Appeals disagreed, noting the Supreme Court's position in *Loudermill* that the process due to a public employee who was about to be discharged included "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" because "[t]o require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *DeSarno*, 761 F.2d at 660 (citing *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506). The Court of Appeals stated that DeSarno's demand for a disinterested decisionmaker was, in effect, a demand for a full-blown adversary proceeding at the pretermination stage contrary to the dictates of *Loudermill*. *DeSarno v. Department of Commerce, supra*. Thus the Court concluded that it was not a violation of due

process, at the pretermination stage, when the proposing and deciding roles are performed by the same person. It noted:

> "The law does not presume that a supervisor who proposes to remove an employee is incapable of changing his or her mind upon hearing the employee's side of the case." *DeSarno*, 761 F.2d at 660.

Therefore, the Court of Appeals found that the pretermination steps taken by the Weather Service met all the constitutional due-process requirements.

We agree with the Court of Appeals decision in *DeSarno*. Berdahl's claim that his response should have been reviewed by a departmental review board, and not by Sorneson alone, is akin to a requirement that there should be a full adversary proceeding at the pretermination stage of the employment dispute. Such an elaborate pretermination procedure is not mandated because of the unwarranted burden it would place on the State's interest in quickly removing unsatisfactory employees. In this case, when Berdahl received pretermination notice, a summary of the evidence against him, an opportunity to respond, and a full post-termination hearing, he was afforded all the due process mandated by *Loudermill.*

Furthermore, Berdahl's due process was not necessarily violated because the Highway Department failed to follow its own departmental policies requiring a review board to consider Sorneson's decision before the termination became effective. See, e.g., *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525 (11th Cir.1987) [no due process violation by board because it failed to follow State statute outlining procedural requirements with regard to pretermination procedures]; *Brown v. Texas A & M Univ.*, 804 F.2d 327 (5th Cir.1986) [university's failure to comport with the pretermination procedures in its policy manual does not by itself violate due process]. In *Brown*, 804 F.2d at 335, the Fifth Circuit Court of Appeals stated:

> "The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of due process, *because constitutional minima nevertheless may have been met."* [Emphasis added.]

Similarly, even if Berdahl established that the Highway Department failed to follow one of its own departmental policies, the lack of compliance by the Department does not automatically establish a violation of due process if the "constitutional minima" with regard to pretermination procedures were followed. In the instant case, it was not disputed that Berdahl received pretermination notice, a summary of the evidence against him, an opportunity to respond, and a full post-termination hearing. Thus the Department's failure to follow its more extensive pretermination policies did not violate Berdahl's due-process rights, since the "constitutional minima" required by *Loudermill* was complied with by the Department.

■ Alternatively, Berdahl contends that his due process was violated because Carlson, an employee of the Highway Department, was a member of the State Personnel Board and participated in its decision regarding Berdahl's appeal. In the past, this court has rejected arguments that members of the State Personnel Board must recuse themselves merely because they were employed by the department appearing before the Board. In *Domek v. North Dakota State Personnel Bd.*, 430 N.W.2d 339, 343–344 (N.D.1988), we noted:

> "This court has held that a state employee must show more than a relationship between a member of the Personnel Board and the agency of the State involved in the proceeding to establish a conflict of interest. . . .
>
> . . . . .
>
> "In *Mattheis v. City of Hazen*, 421 N.W.2d 476 (N.D.1988), we addressed instances in which the probability of bias as an adjudicator is intolerably high. We recognized that such instances include 'those in which the adjudicator has a pecuniary interest in the outcome [or] in which he has been the target of personal abuse or criticism from the party before him.'"

See also *State v. Brewer*, 444 N.W.2d 923 (N.D.1989) [bias was not constitutionally intolerable where agency performed both investigatory and adjudicatory functions];

*Hammond v. North Dakota State Personnel Bd.*, 345 N.W.2d 359 (N.D.1984) [fact that a member of the State Personnel Board was also the acting chairman of the agency which had terminated employee did not, without more, result in a conflict of interest requiring chairman to recuse himself]. In the instant case, there was no evidence that Carlson was prejudiced against Berdahl because of past abuse, nor did Berdahl demonstrate that Carlson had any pecuniary interest in the outcome of the appeal. In short, we conclude that Berdahl has not supported his assertion with evidence of disqualifying bias in this case.

### III. ADMINISTRATIVE RES JUDICATA

■ Berdahl's final argument is that the doctrine of administrative res judicata prohibits the Department and the Board from further disciplining him for a violation of a Department policy that occurred prior to an earlier disciplinary action for the violation of the same policy. Specifically, Berdahl contends that the vehicle misuse of December 1986, which was one of the charges in his August 1987 termination hearing, could have been raised at the earlier proceeding in which he was suspended for two similar incidences of vehicle misuse.

In the past, this court has recognized the validity of the use of the res judicata doctrine to prevent collateral attacks on administrative agency decisions and to protect successful parties from unnecessary, duplicative proceedings which cause drains on the resources of both the parties and the judiciary. See, generally, *Vanover v. Kansas City Life Ins. Co.*, 438 N.W.2d 524 (N.D.1989); *Lass v. N.D. Workmen's Comp. Bureau*, 415 N.W.2d 796 (N.D. 1987); *Amerada Hess Corp. v. Furlong Oil & Minerals Co.*, 348 N.W.2d 913 (N.D. 1984). Administrative res judicata is simply the judicial doctrine of res judicata applied to an administrative proceeding. 4 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* § 40.01 (1977). In the past, this court has defined res judicata to mean:

> "[A] valid, existing final judgment from a court of competent jurisdiction is conclusive, *with regard to the issues raised, or those that could have been raised, and determined therein,* as to the parties and their privies in all other actions." [Emphasis added.] *Peacock v. Sundre Tp.*, 372 N.W.2d 877, 878 (N.D.1985).

*Accord, State v. J.P. Lamb Land Co.*, 401 N.W.2d 713 (N.D.1987), *Oakes Municipal Airport Auth. v. Wiese*, 265 N.W.2d 697 (N.D.1978).

It is clear from the record that the Department first became aware of the December 1986 vehicle misuse in May of 1987 when Falk informed Sorneson of the incident. Because the Department had no knowledge of the incident until May of 1987, it could not have raised and determined the issue in April of 1987 when it entered its decision to suspend Berdahl from his employment. The decision to suspend Berdahl was in the process of appeal at the time the Department first learned of the December 1986 incident of vehicle misuse. In short, the December vehicle misuse was wholly separate from the two similar incidences for which Berdahl was suspended, and it was not within the Department's knowledge at the time it entered its decision to suspend him. Therefore, we find no reason for applying the doctrine of administrative res judicata to Berdahl's claim. In determining whether or not to terminate Berdahl's employment we believe the Department was entitled to consider Berdahl's entire employment record including those violations of Department policy for which he had been previously suspended for three days.

We conclude that the Department's findings of fact were supported by the preponderance of the evidence, that Berdahl suffered no violation of due process, and that the doctrine of administrative res judicata did not bar the Highway Department from terminating Berdahl after it had suspended him. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.