NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LARRY STEWART MOORE**
*Petitioner,*

v.

**DEPARTMENT OF THE NAVY,**
*Respondent.*

---

2012-3009

---

Petition for review of the Merit Systems Protection Board in case no. AT0752100504-I-1

---

Decided: March 13, 2012

---

LARRY STEWART MOORE, of Albany, Georgia, pro se.

JESSICA R. TOPLIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before D YK, C LEVENGER, and R EYNA, *Circuit Judges*.

P ER C URIAM.

Larry Stewart Moore ("Moore") appeals the final deci-
sion of the Merit Systems Protection Board ("MSPB")
affirming the Department of the Navy's ("the Navy")
removing him from his position due to his misconduct.
Because we find the MSPB's decision to be supported by
substantial evidence and in accordance with the law, we
affirm.

## I.   B ACKGROUND

Moore was a Financial Technician with the Transpor-
tation Voucher Certification Division, Programs and
Resources Department, Marine Corps Logistics Command
in Albany, Georgia.   In October 2009, Moore made sev-
eral disrespectful and threatening comments to his co-
workers, and did not cease this activity after directed by
his supervisor to stop.   Moore told his coworkers they had
"better watch their backs," that "it ain't no fun when the
rabbit's got the gun," that he was "getting gang members
to come to Albany, GA to confront someone and that [he
was] just waiting for a name."   A33.   His comments
prompted an investigation by the Navy's Criminal Inves-
tigation Division, in which various statements taken from
Moore's coworkers reflected their feeling unsafe working
with Moore.   On October 29, 2009, the Navy proposed that
Moore be suspended for 10 days for Conduct Unbecoming
a Federal Employee and Insubordination.   Moore re-
sponded to the proposed suspension on November 9, 2009,
denying the allegations, but the Navy ultimately issued a
decision on November 16, 2009 to impose the 10-day
suspension effective from November 23, 2009 through
December 2, 2009.   Moore did not challenge this decision.

Meanwhile, on November 5 and 6, 2009, Moore had again made a series of disruptive and threatening statements to his coworkers, including accusing them of conspiring against him, of being cowards, and of interfering with his finances, and also threatening to interfere with their finances. Moore's supervisor Mark Soroka ("Soroka") had ordered Moore to refrain from making such comments on each occasion, but Moore refused to comply, and instead responded with laughter and disrespectful comments to Soroka. Soroka concluded that Moore's actions constituted Abusive and/or Disruptive Behavior in the Workplace and his second offense of Insubordination (collectively, the "Charged Misconduct"). Moore was placed on administrative leave on November 6, 2009, pending further investigation of the misconduct.

The Navy's investigation revealed that Moore had made many threats against coworkers, causing a hostile work environment including fear of working with Moore. The investigator concluded that Moore's actions were indeed insubordinate, disrespectful, and abusive, specifically finding that

> 11 out of 13 of Mr. Larry Moore's co-workers believe they are working in a hostile environment. All of the co-workers interviewed said Mr. Moore has been a disruption in the workplace. Some of the comments Mr. Moore has allegedly made show a total disrespect for supervisors in a position of authority over him. . . . The overwhelming majority in the Branch feels anxious and believes things will be the same or worse if Mr. Moore returns to his current position.

A74-75. The investigator noted that one employee had already requested to be moved out of Moore's work area and that others were likely to follow.

On January 14, 2010, Soroka proposed Moore's removal based on the Charged Misconduct. As explained in the proposal, on January 6, 2010, Moore was called in to meet with Soroka, Al Dervan, Head of the Navy's Labor Relations Division, and Mike Rogers, Moore's Union President to discuss Moore's return to work following his administrative leave. Moore attempted to record the meeting with a digital audio recording device, and despite having been twice directly ordered by Soroka to turn off the unauthorized device, Moore refused and the meeting did not proceed.

On February 8, 2010, Moore responded in writing to the proposed removal, denying any wrongdoing and accusing Navy employees of conspiring to steal money from his paycheck by imposing an IRS tax levy. After considering Moore's response, the deciding official, Ms. Sandra Lemke ("Lemke"), concluded that Moore's behavior was indeed insubordinate and disruptive as described in the proposal, "threaten[ing] the ability of the workforce to accomplish its mission." A108. Lemke further found that Moore's conduct was in each case serious, intentional, repeated, and malicious. These findings, combined with Moore's prior suspension and his overall failure to admit wrongdoing or show remorse, compelled Lemke to issue a final decision on February 16, 2010 removing Moore from his position. Lemke's analysis involved consideration of the relevant factors set forth in the Board's decision in *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305-06 (1981) for determining the appropriateness of the penalty.

Moore appealed to the MSPB. During a prehearing conference, Moore contended that his 10-day suspension should not be considered because Moore was unable to challenge the underlying charges to an authority above the deciding official. The AJ disagreed, finding that

Moore in fact could have challenged the charges before higher authorities than the deciding official. Accordingly, the AJ declined to re-adjudicate the merits of those charges and limited his review to whether the prior disciplinary action was clearly erroneous.

After a hearing, the AJ issued his initial decision sustaining the removal, concluding that the Navy proved by preponderant evidence that Moore committed the Charged Misconduct. The AJ specifically noted that testimony of witnesses other than Moore (e.g., Soroka) regarding the incidents on November 5 and 6 was more credible because it was corroborated by other witnesses' testimony as well as contemporaneous written statements and communications in the record. The AJ also noted that Moore failed to establish any right to record his January 6, 2010 meeting with Soroka and others, and that Moore admitted to having refused to follow Soroka's orders to turn off the recording device.

The AJ further found that the Navy had proven by a preponderance of the evidence that there was a nexus between Moore's misconduct and the efficiency of the department's service because Moore's repeated threatening and insubordinate behavior occurred in the workplace. A24 (citing *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987)). Lastly, the AJ found that the penalty of removal did not exceed the tolerable bounds of reasonableness, given the ample evidence of repeated insubordination which "so seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once." A25 (citing *Lewis v. Dep't of Vet. Affairs*, 80 M.S.P.R. 472, ¶ 8 (1998)). Thus, the AJ affirmed the Navy's removal of Moore.

Moore petitioned the full Board for review, generally contesting the AJ's factual findings and credibility determinations. After considering Moore's arguments, the Board saw no new or previously unavailable evidence being raised by Moore, nor any error of law by the AJ, and denied Moore's petition, making the AJ's decision final. This appeal followed.

## II. DISCUSSION

Our review of decisions of the MSPB is limited by statute. We may only set aside agency actions, findings, or conclusions if we find them to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ." 5 U.S.C. § 7703(c).

We have previously explained the burden on a federal agency to support its decision to take adverse action against an employee as follows:

[A]n agency must establish three things to withstand challenge to an adverse action against an employee. First, it must prove, by a preponderance of the evidence, that the charged conduct occurred. 5 U.S.C. § 7701(c)(1)(B) (1994). Second, the agency must establish a nexus between that conduct and the efficiency of the service. 5 U.S.C. § 7513(a) (1994); *Hayes v. Department of Navy*, 727 F.2d 1535, 1539 (Fed. Cir. 1984). Third, it must demonstrate that the penalty imposed is reasonable. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 306-07 (1981).

*Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). The AJ's decision correctly stated and applied this law.

On appeal, Moore contends that the MSPB erred in finding that the Navy had proven a nexus between the Charged Misconduct and the efficiency of service. *See* Moore Informal Br. at Question 2 (citing 5 U.S.C. § 7513 ("[A]n agency may take an action . . . against an employee only for such cause as will promote the efficiency of the service.")). In support of this contention, Moore generally argues that the decision was not supported by substantial evidence, and that the AJ erred by crediting the Navy's witnesses and evidence over that offered by Moore. We disagree. Substantial evidence supports the AJ's finding that nexus was adequately proven. Various witnesses and co-workers of Moore confirmed that the Charged Misconduct occurred, and the record adequately shows that Moore's actions were highly insubordinate and created a hostile work environment, impeding the ability of Moore's department to efficiently function. *See Webster v. Department of Army*, 911 F.2d 679, 688 (Fed. Cir. 1990) (finding that disrespectful behavior and refusal to follow orders from supervisors negatively affects the efficiency of service). Sitting as the fact finder, the AJ was entitled to make its credibility determinations in favor of the Navy and its witnesses, and such determinations are virtually unreviewable on appeal. *De Sarno v. Dep't of Commerce*, 761 F.2d 657, 661 (Fed. Cir. 1985) ("Where, as here, the presiding official expressly found a witness . . . credible, this court cannot substitute a contrary credibility determination based on a cold paper record.").

In challenging the proof of nexus Moore also alleges that the AJ erred by permitting leading questions on cross examination, and allowing cross examination beyond the scope of direct testimony. Because Moore fails to identify

any particular testimony that is believed to be objectionable, nor does Moore explain why any of such testimony was prejudicial so as to constitute harmful error, we see no basis for reversal in these contentions. *See Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378-1379 (Fed. Cir. 1988) ("Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials. This court will not overturn the board on such matters unless an abuse of discretion is clear and is harmful. If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case.") (citations omitted).

Next, Moore contends that the Navy committed harmful procedural error requiring the agency action to be set aside. 5 U.S.C. § 7701(c)(2). Prior to removal, an employee against whom adverse action is proposed is entitled to:

(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7513; *see also* 5 U.S.C. § 7512. We disagree with Moore's contentions of any procedural error, as the record reflects that the Navy complied with all four of these requirements. Moore was notified in writing of his proposed removal and the underlying charges on January 14, 2010. The notice indicated that the removal would not take effect for at least 30 days, and afforded Moore 15 days in which to respond to the proposal. We see no evidence that Moore was at any time deprived of the opportunity to be represented—indeed, Moore's union representative attended the January 6, 2010 meeting with him, and Moore privately consulted with his representative concerning the issue of Moore's audio recording device. Moore's ultimate removal decision was promptly delivered to him on February 16, 2010, and included detailed explanation for why he was being removed.

Along the same lines of alleged procedural error, Moore contends that it was improper for the Navy to have "allowed an opposing official, second level supervisor with a start date of August 16, 2009, to conduct all adverse action" against him. Moore Informal Br. at Question 5. Moore fails to identify the official to whom he is referring, but regardless has not demonstrated that there is any particular time period of service required before a supervisor may be a proposing or deciding official in a disciplinary action. 5 U.S.C. § 7513 imposes no such requirements, nor does the corresponding regulation 5 C.F.R. § 752.404.

Finally, Moore makes a number of arguments raising grounds for relief he believes were overlooked by the Board. First, he contends that the AJ and MSPB failed to consider the fact of the Navy's enforcing an IRS tax levy

against his salary. Like the MSPB when it considered this argument, we see no relevance in these assertions to the matters on appeal. Even if these allegations are true, such facts would not detract from the substantial evidence supporting Moore's Charged Misconduct. Second, on a closely related note, Moore also alleges that the AJ erred "in omitting consideration of petitioner's request for action, from the Inspector General (IG)/Command Inspector, to investigate illegal pay activities . . . [and] gave no consideration of an investigation request to the Criminal Investigation Division, concerning illegal pay activities . . . ." Moore Informal Br. at Question 5. We find no evidentiary support for these assertions, and likewise view them as irrelevant to the Charged Misconduct at issue in this appeal. Third, Moore appears to argue, as he did before the AJ, that he should have been able to challenge the merits of his 10-day suspension before the AJ under a standard of *de novo* review. As the AJ found, however, nothing precluded Moore from pursuing the Navy's grievance procedures and any subsequent appeals to challenge the 10-day suspension before authorities higher than the deciding official. Since Moore failed to do so, the AJ properly limited the scope of Moore's appeal regarding the 10-day suspension to review for clear error on that prior disciplinary action. *See Bolling v. Dep't of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981) (holding that, with respect to prior actions being challenged, if "(1) appellant was informed of the action in writing; (2) the action is a matter of record; and (3) appellant was given the opportunity to dispute the charges to a higher level than the authority that imposed the discipline," review of the prior action will only be for clear error). Fourth, Moore contends that the MPSB failed to consider that he had filed a formal Equal Employment Opportunity ("EEO") complaint on November 5, 2009, but the record contains no evidence that any such complaint was filed. In any event, Moore

fails to offer any reason why the alleged EEO filing would afford him a new ground for relief from the Board in his appeal.

### III. CONCLUSION

Because this appeal presents no basis for this court to disturb the decision of the MSPB, its judgment is hereby

## AFFIRMED

### COSTS

No costs.