NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LAURIE JOLLY,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2017-1919

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-15-0013-I-1.

---

Decided: September 11, 2017

---

LAURIE JOLLY, Evans, GA, pro se.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before DYK, LINN, and HUGHES, *Circuit Judges.*

PER CURIAM.

Laurie Jolly petitions for review of a final decision of the Merit Systems Protection Board ("Board"). Jolly was removed from employment at the Army for engaging in conduct unbecoming a federal employee by making menacing remarks. The Board denied Jolly's appeal. We *affirm*.

## BACKGROUND

Jolly was a Health Systems Administrator at the Dwight D. Eisenhower Army Medical Center ("Army Medical Center"), in Fort Gordon, Georgia. Around 2014, Jolly began having difficulties with her work schedule. Jolly contends that she was entitled "to select her starting and end time each day, which she was free to change," while her supervisors deemed her to have fixed working hours. S.A. 20.

On May 2, 2014, Jolly met with Yolanda Kelly, Chief of Medical Expense Reporting System at Army Medical Center, to discuss this issue. According to Kelly, during that meeting, Jolly stated that she felt "she was being singled out, . . . intimidated and threatened," and asked Kelly "if she had heard about the [recent] Camp Lejeune and Fort Hood shootings." S.A. 23. Jolly then stated that "her supervisor, and Col. Barrow, her second line supervisor, needed to be careful, to leave her alone and not to mess with her." *Id*. Finally, Jolly stated that she had already written a letter to her Congressman about this issue. In that letter, Jolly attached a newspaper article about the Fort Hood shooting, and wrote that "[w]e need help stopping the violence. . . . If they do this to me, who else do you think they are doing this to[]? . . . Thoughtless actions (or in-actions) taken by military leaders are often where the deadly tragedies begin." S.A. 21.

Kelly described Jolly's demeanor as "visibly shaken[] and very nervous." S.A. 5. Based on this meeting, Kelly felt very concerned "because she . . . perceive[d] a threat," *id.*, and alerted her own supervisor, Jolly's supervisors, and the police.

On May 5, 2014, Jolly returned to Kelly's office to explain what she had said. According to Kelly, Jolly stated that "her family was bleeding because of the issues with her pay." S.A. 3. Kelly viewed Jolly's demeanor at this meeting to be "serious and very resolved." *Id.* This again alarmed Kelly, and she contacted security.

On June 16, 2014, the Army notified Jolly that it was proposing her removal for conduct unbecoming a federal employee, for making "inflammatory and/or menacing comments which reasonably placed fellow employees in fear." S.A. 21. The proposal stated that Jolly's "comments implied violence towards those individuals causing [Jolly] frustration at work," and that these statements "seemed to be less emotional and exhibited a . . . resolve," especially since Jolly had "repeated the same verbiage in a written statement to a legislative official." S.A. 21–22.

Jolly responded to her proposed removal by contending, *inter alia*, that her comments were rhetorical and not threats. After considering Jolly's response and the relevant *Douglas* factors, the deciding official, Barrow, determined to remove Jolly, effective September 11, 2014.

Jolly petitioned the Board for review, arguing that her statements were misconstrued, that there were mitigating *Douglas* factors to be considered, and that her due process rights were violated because the deciding official was not impartial as Barrow was Jolly's supervisor and a target of the alleged remarks.

The Administrative Judge ("AJ") found that, based on Kelly's testimony and the letter sent to Jolly's Congress-

man, Jolly's "comments were inflammatory and/or menacing and . . . they reasonably placed fellow employees in fear." S.A. 25. The AJ thus sustained the Army's charges. The AJ also found that the deciding official "properly and thoroughly considered all of the relevant *Douglas* factors when she concluded that removal was . . . appropriate." S.A. 26. Finally, the Board found that Barrow's serving as the deciding official did not violate Jolly's due process rights.

Jolly petitioned for review of this initial decision, which the Board denied. The Board affirmed the AJ's initial decision.

Jolly petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).[1]

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

---

[1]    Jolly initially appealed the Board's final order as a mixed-case involving discrimination claims in the Southern District of Georgia on May 13, 2016. *See Jolly v. Dep't of the Army*, No. 1:16-cv-00065-JRH-BKE (S.D. Ga. May 13, 2016), Dkt. No. 1. Jolly then abandoned her discrimination claims and sought vacatur and transfer of this case to the Federal Circuit, where she is afforded the benefit of her district court filing date. *See Jolly v. Dep't of the Army*, No. 1:16-cv-00065-JRH-BKE (S.D. Ga. Apr. 12, 2017), Dkt. No. 19. Thus, Jolly's petition is timely despite being docketed in our court beyond the 60-day limit for review.

In her petition for review, Jolly argues that the Board's findings were based only on "conjecture" and not supported by substantial evidence. Appellant Br. 1.

We conclude that substantial evidence supports the Board's determination. The Board found that "the appellant did not dispute that she mentioned bloodshed and the recent shootings at other military installations during her meeting with Ms. Kelly. She also did not dispute that she asked whether more blood needed to be shed before things changed." S.A. 23. Based on testimony from Kelly and Jolly's supervisors, as well as cross-examination of Jolly, the Board found Jolly's "comments about bloodshed and the shootings at other military installations implied violence towards the two management officials whom she blamed for her problems at work." S.A. 24. Thus, the Board concluded that "while the appellant tries to minimize her statements," S.A. 24, the Army had "established by a preponderance of the evidence that the appellant engaged in conduct that was unbecoming a federal employee," S.A. 25.

Jolly interprets what she had said as merely expressing "concerns of being subjected to unfair labor practices." Appellant Br. 26. Thus, Jolly contends that Kelly's and Barrow's interpretation of her comments, that Jolly implied "a desire to . . . cause harm," was incorrect. *Id.* at 27. The Board heard testimony with respect to these two competing interpretations and favored the Army. *See* S.A. 24. "[F]avoring the testimony of [the] supervisor . . . over" the petitioner's is a "[c]redibility determination . . . within the discretion of the Board and, in general, such evaluations are virtually unreviewable on appeal." *Bruce v. Dep't of Veterans Affairs*, 307 F. App'x 442, 445 (Fed. Cir. 2009) (per curiam) (citation and quotation marks omitted).

Jolly also argues in her petition for review that the Board failed to provide an "honest assessment" of the

relevant *Douglas* factors. Appellant Br. 24. We find no error in the Board's conclusions.

Where an employee makes "threats . . . against her supervisor [that are] unprofessional and inappropriate, and . . . they adversely affect[] the work atmosphere," the penalty of removal is "within the permissible range of reasonableness." *Harrison v. Dep't of Agr.*, 411 F. App'x 312, 315–16 (Fed. Cir. 2010) (per curiam). In such removal actions, the "AJ need not consider every one of the 12 *Douglas* factors;" rather, it is sufficient, for example, for the AJ to address "the nature and seriousness of the . . . charges[,] . . . petitioner's past disciplinary and performance records, and the deleterious effect of his course of misconduct." *Webster v. Dep't of Army*, 911 F.2d 679, 686 (Fed. Cir. 1990).

Here, the Board found that the deciding official had "properly and thoroughly considered all of the relevant *Douglas* factors when she concluded that removal was an appropriate and reasonable penalty." S.A. 26. Specifically, the Board found that "[w]hile [the deciding official] recognized the appellant's 22 years of civilian service, her length of service did not outweigh the seriousness of the misconduct[,] . . . the fact that [the deciding official] had lost confidence in the appellant[,] . . . [and] the sensitive nature of her threat." *Id.* The Board also found that Jolly "fail[ed] to take responsibility for the misconduct" and that she "lack[ed] . . . remorse." S.A. 27. Therefore, substantial evidence supports the Board's conclusion in this respect as well.

Finally, Jolly argues in her petition for review that her due process rights were violated because the deciding official for her termination, Barrow, was "at the center of a contentious relationship with" Jolly and was the alleged target of Jolly's remarks. Appellant Br. 23. Moreover, Jolly argues that Barrow improperly served as both the

proposing official and deciding official for her removal. We do not view these facts as establishing a violation of due process.

First, "[a]t the pre-termination stage, it is not a violation of due process when the proposing and deciding roles are performed by the same person. The law does not presume that a supervisor who proposes to remove an employee is incapable of changing his or her mind upon hearing the employee's side of the case." *DeSarno v. Dep't of Commerce*, 761 F.2d 657, 660 (Fed. Cir. 1985).

Second, the standards of impartiality applicable to post-termination adjudications do not apply in the context of pre-termination hearings. "Nothing . . . limits the deciding official to being a neutral arbiter or requires that the deciding official be unfamiliar with the individual, the facts of the case, or the employee's prior conduct" during the pre-termination hearing. *Norris v. S.E.C.*, 675 F.3d 1349, 1354 (Fed. Cir. 2012). We agree with the reasoning in *McDaniels v. Flick*, 59 F.3d 446 (3d Cir. 1995), where the Third Circuit adopted the rule that an impartial decision-maker at the pre-termination stage is not needed, citing to Fifth, Sixth, Ninth, and Eleventh Circuit precedents, because

> [u]sually, an employment termination decision is made initially by the employee's direct supervisor . . . —a sensible approach given that such person often is already familiar with the employee[] . . . . Yet, these individuals are also likely targets for claims of bias or improper motive simply because of their positions. . . . [T]o require . . . an impartial pretermination hearing in every instance would as a practical matter require that termination decisions initially be made by an outside party rather than the employer as charges of bias always could be made following an in-house discharge.

*Id.* at 458–60.

We have considered the petitioner's remaining arguments and find them without merit.

**AFFIRMED**

COSTS

No costs.